In the afternoon, usual extended time, 30 minutes per side for each side. Anibal Canales, and that can be corrected by the appellant's lawyer on pronunciation, versus Lorie Davis. We'll hear from the appellant. Twenty-five. Is that right? Twenty-five minutes. Look at that clock. Yes, it's a 30-minute argument. Is that what he told me? Okay. Okay, that's good. Yeah, he's put five. Yeah. You can proceed. Thank you. May it please the court, I'm here on behalf of Anibal Canales, who was previously before this court several years ago, and this court remanded his case to the district court for the purpose of having, allowing him an opportunity to develop, develop the factual basis of his underlying Wiggins claim. The court had applied Trevino and found that state habeas counsel performed efficiently, that trial counsel performed efficiently, and that the showing of prejudice had at least some merit to allow it to be, to proceed. We went back to the district court and supplemented our showing, and that included a wealth of evidence about Mr. Canales' social history, including his childhood with, you know, alcoholic parents, violent caregivers. Okay, so we have this E2 argument, and I'm wondering, is there an argument to be made that the law of the case applies, given that they sent it back to develop the facts, although having that footnote about up to the district court, or whether to have an inventory, evidentiary hearing? So are we bound by that to say the prior court already ruled on this, or is that not a fair thing to say? I think it's a fair conclusion to reach from that. I don't think the prior panel would have sent it back if it thought it was going to be a futile gesture, where no matter what evidence Mr. Canales would develop. Well, counsel, it's a fair statement, but the Supreme Court, in a yestice, sent a case back with a closing line that basically says the same thing, which is whether this can overcome the E2 problem, is to be dealt with on remand. We haven't handed down our result in the yestice yet, but Judge Alito wrote that opinion a few months ago, and Judge Prado's opinion in this case says the same thing. So I don't see how you can say that it's law of the case. Well, I took Judge Prado's footnote to acknowledge that the district court had the discretion to hold a hearing, because the district court always . . . You mean a literal hearing versus the sort of semantic hearing of reading materials that are submitted to the court? Either. Any kind of supplementation of the record with additional evidence. I thought that was a fair statement, but then I looked at the government's brief, and Prado has it at the end of his opinion. At the end of the government's brief, when it was up here before, that was what they called this issue. He's not entitled to an evidentiary hearing in district court. They didn't talk about Penn Holster and all the suspects that they have brought back before us today. So it seems to me that the shorthand for this whole issue was whether to have a hearing or not. I'm sorry? The shorthand that the panel used, adopting the language of the government's brief, at least a fair argument is, that he was calling that entitlement to an evidentiary hearing, because that's what Texas called it. And the argument was, Canales is not entitled to an evidentiary hearing to introduce new evidence that was not before the state court. So to say that there was an issue about an evidentiary hearing, I think, does draw in all of these questions that Texas is raising with us, and which the Supreme Court itself has indicated it has not yet decided. Well, I think we did address it squarely in our reply brief. We did. We did it well. And it goes back to kind of the fundamental – well, the statute, E-2, says that if a petitioner fails to develop, then he cannot present evidence unless certain restrictions are met. We don't have to concern ourselves with that. And Michael Williams – Well, I mean, if we did have to apply E-2, you just – I mean, you can't show that – since this whole thing has to do with sentencing, you can't show that the new facts would have changed the conviction. So E-2 – if an E-2 applies, you can't bring the new evidence. That's correct. Okay. So we do have to concern ourselves with that if we conclude E-2 applies. It's only if E-2 doesn't apply that we don't have to concern ourselves with what it says. And E-2 does not apply because if you go to the Michael Williams case, that's where the Supreme Court addressed that fail-to-develop language and unanimously concluded that fail-to-develop means that fault can be attributed to the petitioner. But if fault cannot be attributed to the petitioner, like if there's some kind of cause, as in the standard cause and prejudice test, then E-2 does not apply. But then we typically hold people responsible for what their attorneys do because their attorneys are their agents. So this wasn't the fault of the state or some third party. This was the fault of the attorney, if we accept your argument for the moment that the attorney – and we accept our prior panel obviously found the attorney to be deficient. So it's that attorney's fault. Why isn't that ascribed to Mr. Canales as we typically do? Because Martinez and Trevino changed that. Those cases created a narrow equitable exception if state habeas – initial state habeas counsel failed to raise or failed to develop an ineffective assistance of trial counsel. So through Martinez and Trevino, the Supreme Court – Can the Supreme Court create an exception to a statute, particularly sub salientio, because they didn't purport to be creating an exception to a statute. They purported to be creating an exception to their own rule in Coleman. I don't believe they were trying to change the statute at all because it all comes down to what fail-to-develop means. So they interpreted fail-to-develop. It's really an effort to remedy the ineffective assistance of counsel, which is what Trevino-Martinez extension of that doctrine to Texas as a consequence. In other words, if the habeas counsel is now for the first time freed up to claim cause and does so, and then you say, well, that's good, but you can't raise anything else, that's hardly a remedy for ineffective assistance. In other words, they eliminated the bar that would otherwise attend the case itself by simply saying that you have an ineffective assistance of counsel extends to that first opportunity to review the defects at trial. I don't know if I'm making myself clear. No, I think that's exactly it. If you say that and then you say, well, that's bad, that's all very interesting, but then you can't do anything. You can't remedy that. That's absolutely what our position is. The Supreme Court, I don't think, would have created a remedy for ineffective assistance due to the poor performance of state habeas counsel allow a court to find cause that that attorney was deficient. It won't always be true that the state record is devoid of the information. It just may be the counsel didn't raise it properly. So there may have been stuff where there was a pretrial hearing that a bunch of stuff came out, and then the attorney didn't put that on, or there were depositions, or there was this, or there was that. I mean, there's a lot of things that can be in the record that the attorney messes up. So I don't know that every single IAC case under Martinez-Trevino is going to require the development of new evidence. No, that's why, in Trevino, you don't get a chance to go back unless you make an underlying, you know, showing that your underlying claim has some merit. And that's what the prior panel did. The prior panel looked at what we had presented and said, you know. And when you say what we had presented, so getting back to the law of the case point, when was that developed, the stuff that you put on to the prior panel? To the prior panel? It was a, most of that was attached to the initial federal habeas petition. So it was developed pre the federal habeas. Was it presented to the state court in any form or fashion? I realize that was a successive application that was denied, but was the state court, were those attachments also attached to the state court filings? For the successive petition, yes. Okay. So can it be truly say that it was for the first time mentioned in federal? I mean, in other words, if the state, while they had the right to deny it as an abuse of the writ, got a chance to look at the stuff you presented to the court in the 12-whatever case, then is that different from the typical E-2? Does that make any difference? It would have been presented to the state court, but just kind of going back to the fundamental question of what Trevino requires, I believe it does require an opportunity to develop facts. And I don't believe that E-2 is a bar if you can make a showing that the fault was with the state habeas. I'm just trying to get all the angles. Anything I'm asking doesn't necessarily mean I agree with what I'm asking. I'm trying to get all the angles. Is there an angle where we could say it was developed in the state court, albeit in a successive, but maybe that doesn't count or whatever? Is that an argument? Can we say that the prior panel considered that stuff, whatever that stuff is, that was more than what was presented in the original trial? It was developed sometime after the original trial, and therefore that's law of the case. And then can we consider that Trevino must allow some development in order to make any sense, and then we're to the can they really do that as an exception to E-2? So I'm just trying to get all these angles because this is my last chance to talk to you, so I want to make sure I've understood all that. Yes. At the first trial, virtually no mitigation was presented, just that he was a good artist and got along well. So when it came to federal court, they presented a vastly different picture, something that the jury hadn't seen about Mr. Canales. Mr. Canales sought to return to state court to exhaust the claim and get a merits ruling, but it was denied as abuse of the writ. And when this panel sent it back, he did develop additional evidence that was not considered before, and I think that's something we have to keep in mind. Before, when he was in federal court, he did not have an expert actually evaluate him. There was one expert who reviewed some documents and gave a preliminary assessment. It was only until after the remand that he was seen by Dr. Maddox and Dr. Brawley and Ms. Herrera, put together a very detailed social history to which she attached a number of affidavits that go about the horrific abuse. And I think because state habeas counsel did not do anything, which this panel previously found, we should be allowed, and because our prior showing was at least substantial or had some merit, as the prior panel said, then I think under those circumstances, we should be able to go back to the court. Counsel, you still haven't given us a route. I mean, it makes perfect sense, what you're saying. Martínez Treviño has much less relevance if E-2 is actually a bar. But I don't see the road yet that gets us past E-2. Now, there are a few things you cited in your brief, like a Ninth Circuit opinion from not too long ago, that did say that E-2 was inapplicable. Are you endorsing that at all? Do you want to flesh out any other kind of argument other than this is the only way it can really work? I mean, we need more than that. Well, I think what the Ninth Circuit did is similar to what we're arguing for here, that if you look at the way Treviño is structured, you have to show that the petitioner did not fail to develop certain facts. And again, it goes back to fail to develop means the petitioner was not at fault due to state habeas counsel. And another thing to keep in mind that would also distinguish this is this evidence is also going to the procedural question. So procedural issues are a matter for the federal court to decide, and so there shouldn't be any obstacle to presenting additional evidence. If he had had a lawyer that was effective in his first review, what could that lawyer have done? His first habeas lawyer? If we put substitute for the ineffective counsel, an effective counsel, at that juncture, what could have followed from that? Well, a competent habeas attorney would have been able to seek funding to investigate and develop the type of evidence we had here about – because nobody ever said anything to anyone about Mr. Canales' childhood and the horrors that he had to endure. And those are the types of things that every court, especially the U.S. Supreme Court, has recognized to lessen a defendant's horrors. My question is if he had had an effective lawyer that did all that he was supposed to do, what would be the bar to your – Let me see if I understand. What would be the bar? Well, what's the problem if you have an effective assistance of counsel at this juncture? What could he have developed or not developed at that juncture? Oh, after the remand? Yeah. Okay, yeah. He could have developed anything that went to the merits of the claim, which we tried to do because he never had that opportunity before. What about the original state habeas? If the state habeas counsel had not been confused about how much money he had and did what he was supposed to do, what would he have learned back then in 2004 or whenever it was? He could have learned the same things we had because most of it was gathering records and interviewing so many of Mr. Canales' family members, his sisters and his father and uncles and a number of people that we had laid out in there, and they could have conceivably used that to get funding to have someone develop a social history and a psychiatrist to evaluate him. Does the day principle, the day case principle, apply to the expert here? Because we have this principle that you can't rely on an uncalled witness, in essence, unless you show that he or she would have been available and would have testified to this stuff. So do you all need to have shown that as to the expert you're now relying on to show that they would have been available and testified to this stuff back in, I think it's 2004, which you can correct me on the date, the original state habeas? I don't think we would have to show that these particular experts, although they probably could have, but I don't think we have to show any particular expert. I think Mr. Canales' case was so extreme, I don't think too many people would have had difficulty reaching a conclusion that he suffers from severe post-traumatic stress disorder due to the horrific— Maybe not the same witness, but don't you have to show this evidence would have existed, that these aren't matters that would have only come to light after that if the whole doorway through which this is going is the ineffective assistance of state habeas counsel and a good state habeas counsel would have needed to have been able to find what you're talking about? I don't think there's any question that, because we didn't do anything unusual. We didn't rely on sophisticated new neuroimaging techniques. They require showing this witness. I don't think you can just make up a fake witness and say, oh, yeah, they would have come. It's kind of a strict rule, and I'm just asking whether it applies here. I don't think it would apply in the context of an expert witness, because I think it's— We have applied it to expert witnesses. We said, would this doctor or this psychologist or this person have come, and did you show they were available? Did you show they would have done this analysis, whatever? Well, then that could have been something that would have been resolved at an evidentiary hearing if the judge wanted to— if that was a concern, but I don't think there would have been any question that this type of evidence would have been available to anyone. And I don't think it's ever been—that type of thing has ever been required by the Supreme Court in its cases. It usually looks at the assessment of prejudice and determines whether that witness would have lessened the defendant's culpability. All right, now let's talk about that, because that is kind of the bottom line. If you get past D-2 and you get past D-Day and you get past all of this procedural hurdles, and now you're at the OASIS, can you really show that this person who was even threatening witnesses from jail murdered someone who he saw as a threat to him in jail, in prison? Can you show that the—really that the balancing, the weighing of mitigating against aggravating really does meet the standard necessary to grant a new trial on the sentencing? Yes, I do. And I think one of the things is we could take into account sort of the evidence about his medical condition in prison, which the district court even found compelling. I mean, that's—the remarkable things about this case was the district court, the magistrate judge, and even the director found much of this evidence compelling, which would seem to be a sign that at least one juror would have found it compelling enough to vote for a life sentence. It's compelling that he has this heart condition, but that's exactly what took him down this path, he says, of being frightened, et cetera. And even if he's in a more secure facility, unless you're in complete solitary confinement with armed guards all around you, you're never totally secure. And so if he ever gets in this same situation where he feels threatened either because of his condition or just in general, we can expect he'll act the same way. He did it several times. That seems to be his reaction to his own condition. I think that even if the evidence would show that he could be a future danger, I think it's still reasonably probable that at least one juror would have heard this evidence. When the jury considers future dangerousness, that's kind of the first instruction they're given, and they could factor all that into the future dangerousness thing. But in the next step, they're just asked to consider mitigation evidence, and they could vote, and they're not given a burden of— But, I mean, how really—like you might say this guy just never had a chance and so blah, blah, blah. But how does having a heart condition—a lot of people have heart conditions, and it doesn't justify them murdering everybody they find difficult to deal with, okay? So how does having a heart condition mitigate against murdering anybody that bothers you? Not everybody has a gang put out a hit on them and have to find relief or protection by another gang because their life is literally on the line. I mean, most states have specific mitigating circumstances about under the influence of others. And some of the other—the cases from the U.S. Supreme Court that we touched on in our briefs, like Porter v. McCullum, where there was expert evidence that he was impulsive and tend toward violent behavior, and yet that was considered sufficient enough to warrant relief for Mr. Porter. One case that's particularly apt here, I think, is—and the prior panel cited it—is Williams v. Taylor. And that's very appropriate because that case is a lot like Mr. Canales. It has a lot of similarities, in part because Virginia, like Texas, requires a jury to find future dangerousness. And Williams had—besides the murder, he had committed armed robberies, multiple other offenses. He beat two elderly people. He started a fire outside their home before attacking and robbing them. He brutally assaulted a woman and left her in a vegetative state. And the state even presented to experts that he would be a future danger. Yet the Supreme Court found that his abusive, deprived childhood and mental impairments might well have influenced the jury's appraisal of his moral culpability. And so I think we're in the same position. All of the dramatic facts of Mr. Canales' life, being stripped naked and beaten with a belt buckle or trying to come to the aid of his sister who's being raped, even though he knows he's going to get a beating for that, all those things might well have influenced the jury's appraisal of his moral culpability. And also, as we know, that mental illness, especially something like PTSD, is classically considered something that reduces someone's moral culpability. So the question isn't could a juror find future dangerousness and sentence him to death because, yes, but Strickland is not a sufficiency of the evidence test. We don't have to show that there's no way he would have gotten a death penalty. We just have to show there's at least a reasonable probability that a juror would have been moved. And I think all the case law that we've read shows that jurors will respond to this type of mitigating evidence, and appellate courts have agreed. I lost my train of thought for a minute. Right. So we don't – and there's also – I mean, one of the things that have come up is this court has recognized that there's no real – there's not a case that's – like this, it's going to be so awful where a juror – juries would never consider a life sentence. I don't think this is pretty awful. It's an awful case, but – I mean, to me what's awful is the post-killing of – I think it was Dickerson – all these letters he wrote and his continued efforts to kill anybody he thought was a rat. That is worrisome to me, and I think would be worrisome to a juror. And in doing this weighing that we're supposed to be weighing, the district court's weighing, that would weigh pretty heavy. And I'm sure it would, but it's not foreclosed. I mean, I think a juror could still vote for it. And one of the things we brought up – We need a reasonable probability, not just a might-could, because, I mean, almost anything is a might-could in a trial. Well, a reasonable probability. That's right. For one juror. There's something more than might-could. So one juror, two jurors might vote the wrong way. And one of the things I wanted to bring up is in our reply brief, I believe it was, we mentioned – or this may have been in our COA pleadings. We cited a number of cases, very aggravated cases, some of them involving prison killings where juries came back with life sentences. The Jesse Conwee case was a federal case with horrible facts where he had killed several people in prison. Or Terry Nichols, one of the Oklahoma City bombers, received a life sentence. So there have been incredibly aggravated cases where someone's received a life sentence from a jury.  Thank you. Thank you. Thank you, Judge Southwick. May it please the Court. There is no road for Mr. Canales around or through 2254E2. Well, the State's been making that argument for a while, and I guess you made it back in 2013 before the Canales 14 opinion. Who has bought it so far? Facts like this. We've got the Saguno case. We've got a bar. You cited those. But on a situation such as we're facing today, has any court either accepted or rejected that other than the Ninth Circuit? I talked about that opinion. I think the main cases from this court would be Ibarra. But I think the most important case that has not only accepted but established our understanding of E2 is Williams v. Taylor by the Supreme Court. What about Barrientes? Barrientes. Barrientes. Right. Barrientes is a fact-specific case in which under the specific conditions there, because of the particular facts, if that petitioner could establish ineffective assistance, then he could introduce new evidence because he was not at fault. And that's the critical difference here. He didn't fall into E2 because he did not fail to develop the evidence supporting his claim within the meaning of E2. Now, Williams v. Taylor made absolutely clear what Congress's intent was. The failed to develop bar under 2254E2 does not apply if the petitioner establishes cause for overcoming procedural default. He has certainly shown that he did not fail to develop the record under that. Right. And the key language in Barrientes is in this case because it was his particular facts. His particular case? Yes.  I would direct the court to Barrientes. The facts there were that he did not fail to develop the evidence, nor did his lawyer, because the evidence was concealed by the state. And so that would not fall into E2. It's quite a different proposition when neither the petitioner nor his counsel develops the new evidence in state court, and that's exactly what was going on in Williams. But you do have this circularity. And while I myself said, you know, it's possible you could have developed some record and still been ineffective, et cetera, et cetera, but don't we have a circularity of, well, because counsel didn't develop facts, he or she should have developed, therefore I didn't get my mitigating evidence, therefore I've got a problem. And then the state habeas doesn't raise that, and therefore I've got cause and prejudice. But now I still can't show that because of E2. How does that ever work? Well, it could work in two situations, and I want to get back to why that is a separate question from what Martinez decided. But it works in two situations. Excuse me. Your argument is essentially that had he had confident counsel at the point at which it's been found that he had ineffective counsel, he would have been barred at that time. No, no, that's not our argument. Well, I know it's not your argument, but what I'm saying to you, though, is that by your argument, you are constructing an argument that there is no remedy for the ineffective assistance that counsel had, although you can see that had he had effective counsel at that time, then he could have prosecuted the case. Yes. In this case. But he didn't. That's what I'm saying. You're saying, well, it's meaningless to have ineffective counsel. If counsel is ineffective, he didn't develop it. Had he had effective counsel, he would have developed it, could have developed it. He absolutely could have, and that's exactly why he falls into E2. But to take your question only on its terms, it does not mean that no person ever has a remedy. And this goes to your question, Judge Haynes. We're not saying that — But you're not answering my question, though. What used to him of effective counsel was if this effective counsel couldn't have done it. Or to say it another way, if an effective counsel would have not faced this bar, why is it that when we remedy that deficit that he can't be — he's not put back in that place? I was just reading the quote here from the language. It said, if Petitioner establishes cause for overcoming procedural default, which he did, he has certainly shown that he did not fail to develop the record. I don't say the record. I mean, I don't — and you say this case. I'm not following your argument. I believe you're quoting from Barrientos again. Yes. The answer is — You didn't quote that in your brief. I didn't see it. I didn't even think you cited it. I think they cited it, and I think we — You may have. I just looked at one of them, and nobody cited it. The one I looked at, I went back to see who didn't cite it. I don't know. But it doesn't matter. If I could start from the beginning, and maybe this will answer your question. The problem in the petitioner's E-2 argument, his only response is that it can't apply because of Martinez. Martinez addressed a different question than E-2 addresses. Martinez created a narrow equitable exception to a court-created rule of procedural default. That's one bar that can prevent a federal habeas petitioner from proceeding on a claim. E-2 imposes a separate bar, which is distinct from procedural default. Which only applies to — which only operates, by your argument, to ineffective assistance. In other words, if he had had effective assistance, he wouldn't have been barred. That seems to me that you go one way or the other. If he had effective assistance of counsel, it would not have been barred if he had developed this evidence. Well, if he had had effective assistance of counsel and presented the claim, then he would face a different bar. But I suppose you're right, but that won't be true in every case, is the point I'm trying to make. It will certainly be true in some cases that a person who sets aside procedural default — Well, I'm just reading the language from the opinion. If petitioner establishes cause for overcoming procedural default, he doesn't stop. He certainly has shown that he did not fail to develop the record. Of course, that makes sense because it's odd that a petitioner could establish cause to overcome a procedural default rule and then not develop the factual record to establish the prejudice point of that. And in that case, he did not fail to develop the record. In this case, like in Williams, he did. And what Williams says is that the— He developed the record. Who did? In this case, who developed the record? In Variantes, the petitioner, neither the petitioner nor his counsel failed to develop the record in the sense that they were not diligent or were at some other type of fault for not developing the record. In Williams v. Taylor, the court said the language failed to develop in E-2 means, quote, lack of diligence or some greater fault attributable to the prisoner or the prisoner's counsel. Williams was an ineffective assistance claim, and it found that prisoners— And that was post-Trovino. It was pre-Trovino. Pre-Trovino? Yes, it was 2000. So that's the question. Well, that's the point, my friend. The law changed. If we were to rule your way, would we be the first post-Trovino circuit to do so? That E-2 bars development of the record that the ineffective state habeas counsel failed to develop. Your Honor, I honestly don't know the answer to that because I don't know— I cannot tell you that no other circuit court has held that. Well, let me put it this way. Can you cite us a case that supports your position? Post-Trovino, of course that's true. Pre-Trovino, that's the whole point. We went through this whole exercise for a period of time when ineffective assistance of counsel, there's no constitutional right to a lawyer, but then the court is a prophylactic matter. Roberts' writing said we're going to have—we'll give you a remedy for that ineffective assistance, albeit not constitutionally based. Then it was later extended to Texas. Now, you come in with a case, you know, talk about variances. You talk about a case that was pre-Trovino and you—as if ineffective assistance doesn't exist. Your Honor, the reason that I talk about that case is because Martinez did not purport to and it could not have overruled Williams v. Habeas. It's not touching the statute. It's having to do with—it's rimming a wrong to the—putting him in a position of where he was. It nullifies what—if it's counsel ineffective, he's not being captured by that ineffectiveness, which is what you're doing with your argument. He's his lawyer, and you quoted that, whatever his lawyer might do. That language ended with Trovino. In other words, he had a finished decision. We put him back, give him effective assistance of lawyer. And that's why I asked the question, can you go forward? We go—now we put him back. If effective counsel were barred at that time, then—and it could not have done it, well, sure. But that's not what I'm hearing. Your Honor— We're not communicating. I'm sorry. Respectfully, I have to say that is not what Martinez and Trovino did. They did something very limited. They did not say, you, petitioner, will have a complete remedy. They did not say, we will put you back in the position you would have been in. What does this language mean if petitioner established cause for overcoming procedural default? It's certainly shown that he did not fail to develop the record. Your Honor, I think the best answer I can give you on that is to look at Barrientos because he is not— Well, what does that language mean? That means that because he did not fail to develop the record, if he can overcome procedural default, then E2 doesn't impose a bar. He is not like Canales because there was something external to the defense that prevented him from developing the record in Barrientos. And that is not the case here. That's why this case falls into Williams. So ineffective assistance is meaningless then? No, it's not because in any case with a record-based ineffective assistance claim, E2 will not impose a bar. And very importantly, in any case where the petitioner can actually satisfy E2, even on an extra record claim, he may still get relief on a claim that was defaulted but excused under Trovino. What the court could not have done in Martinez is alter the language and the meaning of E2 through an equitable exception. It could not—it did not do that. Would it be fair to say that you would be creating a circuit split with the Ninth Circuit if we went your way? I don't—I don't know because I believe that the Judge Fletcher opinion that says that E2 doesn't matter is not a controlling opinion. But if I'm wrong about that, I will concede that it would be a conflict with the Ninth Circuit. And is it fair for me to assume that in your research for this brief, you being your full office, you all would have looked at other circuits when you felt that the Fifth Circuit maybe didn't answer the question and this E2 thing comes up that you want to raise. So your inability to cite us a case from another circuit, while not absolute, probably suggests there isn't such a case because you certainly have been looking for it because you'd love to come running in here and mention it, right? I mean, that's fair. Your Honor, what we have focused on here is the—we have focused on Supreme Court cases because this is an area of law which is under development after Trevino, and we have been consistent in advancing our position based on the statutory text that Martinez and Trevino could not have changed the Supreme Court's prior interpretation of Congress's intent in E2. Okay. So as an officer of the court, you are telling me you did not look to see if any circuit had done something consistent with what you're arguing here since Trevino? I'm not telling you that. I have looked. I have looked to see if any court has— That was my point. And, I mean, I understand you're not swearing to us that it doesn't exist because they could have decided it last week and you missed it, or you missed it and they decided it two years ago. I'm just saying that is a normal thing you would look at. I'm not faulting you for that. That is something you should look at. And we just need to know these things because when we create circuit splits, that's something we need to know about as a circuit. We also need to know if some other circuit has gone opposite the Ninth Circuit. That's helpful to know. I mean, as you say, this is a developing area. It's relatively new in the history of habeas law that we have Martinez and Trevino, so we're trying to struggle to make sure we are consistent with Supreme Court opinions, and I appreciate you focusing on that. But we do have the problem that Coleman is also a Supreme Court opinion, and Martinez and Trevino changed that. So we're having to see what practically was affected by that. I understand that. And what I can tell you now is I am not aware of another circuit that has adopted the position that we are arguing today. I am happy to go look again and provide that to the court if I find something I have not found before. Let's assume arguendo A-2 does not apply or that A-2 does not bar the evidence they've developed in the district court subsequent to the original appellate decision. What would be your winning argument then, if any? Even if A-2 does not bar his new evidence, he can't show prejudice because his new mitigating evidence also had an aggravating effect, and not just a general aggravating effect. It had an aggravating effect that highlighted the very reasons that the jury found that he posed a risk of future danger. The existing evidence that the jury already knew about was the murder of Gary Dickerson, obviously. It was a gang-related murder. They knew that he had boasted about it. They knew also that in a previous conviction, he had sexually assaulted a young woman, and while he was awaiting trial he called her because he had stolen her wallet and threatened to kill her if she testified against him. He did something similar while he was awaiting trial here. He tried to have, I believe it was Larry Whitted or Whited hit by his gang to prevent him from testifying. His new evidence, all it might do is explain why he is the way he is, but it would also highlight that the way he is is inherently and irredeemably dangerous. Our cases certainly have language such as two-edged sword, and that is part of your argument here. It seems to me on reasonable probability of one juror, that can be an overdone statement, how certain evidence is going to strike certain jurors. We're supposed to decide that. The district judge is supposed to decide that first, and we review the significance of this evidence, but it is very much to be redundant, fact-based, and how it will affect people to some extent based on our view as lawyers and judges, maybe not the best estimate of that. So I don't think it's enough to say that it's aggravating as well as mitigating. It has to be so overwhelmingly aggravating that there won't be some sympathy or whatever drives jurors, one juror, to hang up on this and to keep the death penalty from being imposed. What would you say is why this is so clearly insufficient, regardless of the procedural issues that we've talked about? I think the key problem with his mitigation in this case is he is arguing that the court should have somehow considered only mitigating aspects and not aggravating. The problem is that this was a murder committed in prison. It's part of a longstanding pattern of criminal behavior and involvement in gangs that traces back to his early teenage years. That is the gap that is filled in by the mitigating evidence. Well, part of what he's saying is, I mean, I may be overstating it just a bit, but you may have fairly characterized it. It's not so much that the aggravating part shouldn't be ignored. It's just the jury already had the aggravating part, and so the only new evidence in volume is the mitigating part, and the juror never had that. Is that a fair assessment that they already had all the bad stuff, the jury? Not all, but they had the flavor of that already? That's a fair assessment of his argument, but I don't think that's a fair assessment, and I don't mean to— Well, no, you're answering precisely, and I didn't ask it precisely, so go ahead. I don't think that's a fair characterization because our whole point is, and this is consistent with this Court's case is considering mitigating evidence. The notion that something can be double-edged doesn't mean that it's not ever mitigating. It just means that there is a balancing that goes on when you're weighing the new evidence against the old, and the nature of double-edged evidence is that it places weight on both sides of the scale, and the problem here is that his evidence— the point, as I understand it, of his evidence is to show essentially he couldn't help it. He just didn't have a choice to do what he did, but I don't think there is a substantial— there's not a substantial chance that even one juror would hear all of this evidence, think about what they knew, and say, well, he couldn't help it. I think it is equally if not more likely that they would look at that and say, oh my gosh, he can't help it. He's going to do it again, and he is already in a situation where he is subject to the very pressures that allegedly led him to engage in the murder. And there's a new aspect of this, which is the heart disease, but I think it's important to note that the stress and pressure that led to this exists independent of the heart disease. He was in one gang. It was not the Latin Kings, the Texas Syndicate. They found out that he had been in the Latin Kings and that he was in on a sexual assault charge, so they put a hit out on him, and that's why he sought protection from the Texas Mafia. That had nothing to do with heart disease. That had to do with being a gang member in prison, and we know that gang members in prisons, unfortunately, are subject to this kind of violence and retaliation. That's what happened to Gary Dickerson. Can you remind me how we—what standard of review we used to evaluate the district court's weighing of the aggravating— so, again, putting aside the E2 arguments, we're to the point of looking at the weighing. Do we have to give any deference to the district court on that? No, Your Honor. The prejudice is a mixed question of law and fact, so it's de novo. Okay. That's right. But I think the point is that by explaining how Mr. Canales got to where he is, a good example of this principle is Clark v. Thaler, I think, because it articulates it well. It says Clark v. Thaler, and we cited it on, I believe, page 19 of our COA phase brief. And the principle is while this evidence might have led the jury to think that he was less morally culpable, it also would have led them to think that as a product of his environment, he would be likely to do this kind of thing in the future. He is going to get better. Exactly. And so I think, you know, the notion that we can separate mitigation and aggravation is artificial because they are intertwined. That's why Wiggins talks about balancing and reweighing. And in this case— How do we factor in—I interrupted you. I'm sorry. But how do we factor in that that kind of evidence strikes different people in different ways? In some, he's saying he can't help it. Some people may be struck like that. Sad childhood, all the rest of that may strike some people as being a reason not to give the death penalty despite his dangerousness. Is that not a factor for us? Do we do it from what we say is the most reasonable way to evaluate whether somebody ought to get the death penalty? Or some sort of speculation almost at what might strike jurors, one juror in a certain way. Well, you know, as uncomfortable as it is to say, I think this court and the Supreme Court have recognized that it is inherently speculative to some degree. And I think that's why it's difficult. So what we have to look at is from an average juror's perspective, knowing what they know, how is this going to change the balance? And I think looking at other kind of distinguishable cases— The question is not whether it is going to. The question is whether it could. But this court has said, and it's consistent with our observation, I'm sure of our colleagues too, that we see a lot of these capital cases— and I've been doing it for as long as capital punishment has been back on the table looking at these things— and with overwhelming exception, with rare exception, it is that you had someone that didn't suffer from a horrific childhood. I mean, I'm not talking about just a poor little kid that occasionally got his tail whipped. I'm talking about people who were tortured, brutally treated in every possible way. And those account for a high percentage of the capital cases that go down. That's not to say that it's mitigating in that sense. We've said that the juror is entitled to know that because they also look at this individual. This is what happened to this person. God bless his little soul. He may be killed again, but whatever. Maybe they balance that all out. But to say that you can put it to one side because simply this guy is so bad cannot be the law, and it's not. I mean, so this guy got no mitigating case at all. I don't know what the jury would have done with it. I mean, this, as most of them do, when you look at the crime, is not exactly a happy case. They're terrible. And you ask the question, if anybody's going to get capital punishment, then this guy would be a candidate for it, okay? But that just doesn't answer the question. The problem here is that it just didn't happen. And now the question is, do you remedy that or not? And we have some uncertainties about whether or not we talked about earlier. I'm going to revisit that. But I don't think you can out of hand just say that, look, this guy was so bad that you can't. We can make that judgment, but it's a difficult one. It is, and I don't mean to suggest that we should set it aside or that it's not worth anything. I've been doing this long enough to know that the childhood is the worst part of these cases. But I think it is the courts have recognized that even on the most horrendous facts, it is still the case. But even with that, it can still have more of an aggravating effect. Of course, of course. A jury can do it. What you've not said is it's not the jury's decision. It's the jury's decision. The jury has to be entitled to weigh that. He's entitled to present that case. Let me give you an example of that. Look at Mike Tiger's defense of one of the two bombers at the Murrah Building that killed large numbers of people and children and so forth. That individual got life in prison. The other one went to death. But the mitigation case that's put on in that was able to persuade the jury not to do that. And so I could cite a lot of cases where that happens, and some horrendous cases. The jury just said this is a terrible thing, but I'm not going to hold him accountable for his death. I don't know how to answer that either, but the reason I can't answer it, under the law, it's the jury that answers that question. Juries, that's what we have the juries for. And we don't just say, well, they're not capable of doing it. They're the only ones who can make that decision. Your Honor, I agree to a certain extent, yes, that is a question that goes to the jury. But it is also a question in this posture that must be answered by this court. I agree with that, whether or not it was prejudice or not. I like that stuff. Right. That's a tough call. Is it reasonably likely and is the likelihood substantial? It's not might have. And so I think the counterexamples that I think are helpful are cases like Porter v. McCollum where it's a crime of passion and it's a one-off event. And so you can trace a specific outburst or violent act to a person's horrible past, but it's not a pattern. It's not part of a criminal lifestyle. The same is true to some extent in Wiggins because, recall in Wiggins, the problem with his mitigation presentation at trial was all they said was he didn't have any prior – he didn't have a criminal record. So in that case, it is a different situation from where the jury is looking at something and saying, yes, this is terrible, but look what it's produced. And so I think that is the difference. If I could, before I run out of time, if I could go back to the E2 argument. When Congress enacted E2, they deliberately raised the bar against new evidence in federal habeas from the former cause and prejudice standard that was in Keeney v. Tamayo. It says due diligence, doesn't it? I beg your pardon? I said you have to have engaged in due diligence to develop a record. That's the language, isn't it? Well, they said that the lack of diligence or some greater fault attributable to the prisoner or prisoner's counsel. And so that's an interpretation of what Congress intended, and Martinez could not have upset that. It certainly couldn't have done that without saying it. It didn't cite E2. It didn't cite Williams. And so that means that well-settled agency principles from cases like Coleman, Keeney v. Tamayo, Reyes still control. Well, and can you argue that because you don't have entitlement to counsel in state habeas that you are responsible to be diligent? You can't just pass it off on counsel. Yes, that's right. And not only is it right, that's what E2 continues to say, and Martinez could not have changed that. A factual prejudice could not have been previously discovered through the exercise of due diligence. A predicate, a factual predicate that could not have been previously discovered through the exercise of due diligence. Right. I think that would be similar to 2254E2A2, the previously undiscoverable facts, which is down the road a bit. But the failure to develop is a heightened bar. And I also want to point out as far as the Ninth Circuit, Martinez was very clear that they were deciding a narrow question. And they were clear in Davila that courts there at the Ninth Circuit should not extend the reasoning of Martinez without letting the Supreme Court consider and overrule its own cases. All right, counsel. Thank you, Your Honor. A couple of points. One, going back to the mitigation evidence, I also want to point out that the Supreme Court has been very clear that even evidence that might have in some circumstances a double edge to it, even if it goes towards something like future dangerousness, nevertheless might explain the events. And I think that was one of the big things in Sears v. What do you do with the fact that maybe the Supreme Court should have overruled Williams in part in Martinez slash Trevino, but they didn't, and we're a lower court. We can't do it for them. And they tell us that every day. That's a very solid rule in their court. And I respect that. I'm not being disrespectful. I'm saying they are the ones to say, you know what, this part of Williams just doesn't live past Martinez. But for us to say that, I know, evokes a somewhat unhappy response from the Supreme Court. So how do we square that up? I think there are two things for this. One is that Trevino actually fits pretty seamlessly into the cause and prejudice jurisprudence. It doesn't, you know, and I think that's why the, you know, I'm speculating, but that's probably why the Supreme Court didn't actually mention E-2, because going back to Michael Williams, cause means the petitioner did not fail to develop. And in Trevino, the petitioner can show cause by pointing to state habeas counsel. So I think that makes it, you know, work within that. They had the chance in IS just to go, oh, yeah, well, you know, E-2, nothing. Instead they go, we don't need to reach that. So they don't seem to think it's been decided. If it was, they could say, well, we don't need to decide E-2, it's over there in Williams. Why can't you guys read? Here's the other part, and I think this particular part might not have direct relevance to Texas, but I think it covers this point very well. In Trevino and in Martinez, they said they would make an equitable exception if you received poor habeas counsel, state habeas counsel, or if the state did not offer counsel at all, like a state like Alabama. So in a state ñ They did not find a constitutional right to counsel. They just said that's going to allow cause and prejudice. That's a significant limitation on Martinez and Trevino. But the prejudice has, you know, ineffective assistance almost always depends on new evidence. But see, once you've shown cause ñ so even if you could argue that to show cause and prejudice you can put on what you want, then once you're past that to the underlying ineffective, then you've got the E-2 situation. And as I said, I mean, I think your argument is the more logical one, but I've already seen how the Supreme Court deals with us, you know, tea-leaving them. They don't appreciate that. And I feel very much like I need to do my job as a lower court judge and not intrude upon the role of the Supreme Court. I mean, I think that's why, I mean, no other circuit's adopted the position that, you know, the director's taking now. I mean, it hasn't come up. They haven't said the opposite other than whatever you want to make of the Ninth Circuit. This is still an issue that has not hit the circuit level with published opinions, has it? It hasn't come up very much at all. So it's not like they've not been adopted, but you have. Neither side of you have much to give us. Is that a fair? I guess that was a question. Did that sound like a question? Right. It's just not. Okay. It hasn't come up a lot, unfortunately. But I think it fits in. And I think, you know, going back to the case, if there's no attorney and you could show cause by that, what's the point of allowing a petitioner to show cause and prejudice if the end result isn't going to be you're going to see the merits? I mean, what you're saying is, okay, you could show cause, you could even show prejudice, but, you know, we just can't look at, you know, the merits. Well, again, mine is not to question why. I mean, I kind of like you're in an open season. I kind of like your argument better, but I am really reluctant to tread where I've been told not to tread. I think if the focus is on Williams' language of fail to develop and what that means, I think you're not going to be upsetting any established precedent. I think all you're saying is, you know, fail to develop means. . . Means different things at different times? It means cause. It means you don't have cause. And, you know, it could be cause from, you know, whatever. Like in Barrientos, there was a showing of cause, and this court says if you show cause, then E2 is not a problem. So here you have cause due to state habeas counsel, and so E2 shouldn't be a problem here either. And it's all consistent with Michael Williams. See, I'm out of time. All right, counsel. Thank you. You have presented your argument ably, as has your friend on the other side. It's now our turn. We are adjourned.